UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARK BEHNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 1:08-CV-71 |
| | ) |
| ROEMBKE MANUFACTURING | ) |
| & DESIGN, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| ROEMBKE MANUFACTURING | ) |
| & DESIGN, INC., | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK BEHNING, | ) |
| | ) |
| Counter-Defendant. | ) |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court for resolution of Plaintiff's Motion for Leave to Amend filed on May 8, 2009. Docket at 29. The defendant filed a response in opposition to the motion on May 18, 2009 (docket at 30) and the plaintiff filed a reply brief on May 27, 2009 (docket at 31). For the reasons discussed herein, the motion to amend is GRANTED in part and DENIED in part. The plaintiff is directed to file a revised First Amended Complaint that complies with the ruling in this Order. The revised First Amended Complaint shall be filed within fourteen (14) business days of the date of this Order.

**DISCUSSION**

Plaintiff Mark Behning ("Behning") filed his original complaint in this case on March 14, 2008, alleging that the defendant corporation, Roembke Manufacturing & Design, Inc. ("Roembke Manufacturing") discriminated against him in violation of the Age Discrimination in Employment Act. Complaint, docket at 1. Behning worked for Roembke Manufacturing for 22 years and was terminated from his employment on February 28, 2007. Complaint, pp. 2-3. Behning claims that after his termination he was replaced by a much younger employee whom he had trained to do his job. *Id*., p. 3. On June 11, 2008, Roembke Manufacturing filed its answer to Behning's complaint and included a counterclaim for attorneys' fees based on the assertion that this lawsuit is frivolous and groundless. Answer and Counterclaim, docket at 14, p. 7.[1]

In his motion to amend his complaint, Behning seeks to add John Roembke ("Roembke"), the owner and CEO of Roembke Manufacturing, as a defendant in this case. Motion to Amend, p. 2. In addition, Behning seeks to add retaliation claims against both the corporate defendant and John Roembke. *Id*., pp. 11-13.

Behning claims that in addition to being a longtime employee of Roembke, he was also a part-time farmer. Proposed First Amended Complaint, docket at 29, Exhibit 1, p. 4. Behning explains that "[f]or many years, [he] leased farm land from John Roembke pursuant to a written lease agreement. According to its terms and operation of Indiana law, the term of the lease is

---

[1] Roembke Manufacturing bases its counterclaim on an Indiana statute that states, in relevant part: "In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party: . . brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless[.]" I.C. 34-52-1-1(b)(1).

year-to-year. For more than fifteen years, the parties renewed the lease for succeeding years." *Id.* However, Behning claims that just days after Roembke Manufacturing and John Roembke received a copy of Behning's Age Discrimination claim filed with the Equal Employment Opportunity Commission, John Roembke "attempted to terminate the subject lease in the middle of its annual term." *Id.* When Behning protested John Roembke's attempt to terminate the farming lease, Roembke permitted the lease to remain in force and effect for 2008, but "informed Behning that, notwithstanding the parties' longtime practice of annual renewal of the subject lease, Roembke was purporting to exercise a right to eschew renewing the lease for 2009." *Id.*

Behning claims that John Roembke's act of terminating the lease constituted retaliation against Behning for having filed his claim of age discrimination. *Id.* Behning further contends that he should be able to pursue a retaliation claim against Roembke Manufacturing also, since "John Roembke is the owner of Roembke Mfg., and serves as its Chief Executive Officer, [therefore] Roembke Mfg. knew of Roembke's retaliation against Behning." *Id.* Roembke Manufacturing argues that Behning's motion to amend should be denied for several reasons. "First, John Roembke is an individual and not an employer. Second, Behning was not an employee or an applicant for employment when the alleged retaliation occurred. Third, Behning cannot establish a prima facie case because there has been no adverse employment action." Defendant's Response, pp. 1-2. Roembke Manufacturing also argues that Behning cannot meet his burden of establishing a prima facie case of retaliation. *Id.*, p. 6.

Once responsive pleadings have been filed in a case, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "Courts are to use their discretion under

Rule 15(a) to liberally grant permission to amend pleadings so long as there is not undue prejudice to the opposing party or undue delay, bad faith or dilatory motive on the part of the movant." *Sides v. City of Champaign,* 496 F.3d 820, 825 (7th Cir. 2007) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Of course, the proposed amendments must be legally valid. In this case, Roembke Manufacturing claims that there is no legal basis by which Behning can add John Roembke as a defendant or add a claim of retaliation against the present corporate defendant.[2]

As stated above, Roembke Manufacturing argues that Behning's motion should be denied for several reasons. The company first argues that proposed defendant John Roembke was not Behning's "employer" as that term is used in the ADEA. Defendant's Response, p. 3. Roembke Manufacturing concedes that the term "employer" refers not only to a company or corporation, but "'also means . . . any agent of such person.'" *Id.* (quoting *Uhlman v. Panares*, 2008 WL 1957880 *2-3 (N.D.Ind., May 02, 2008). However, Roembke Manufacturing also points out that the court in the *Uhlman* case stated that "'the inclusion of an employer's agents in the definition of an 'employer' [in discrimination statutes such as the Americans with Disabilities Act and Title VII] . . . is simply a statutory expression of traditional *respondeat superior* liability.'" *Id.* (quoting *Uhlman*). In other words, the fact that Roembke Manufacturing could be held liable for

---

[2] When ruling on a motion to amend a complaint, the court must also consider how the proposed amendment will affect any scheduling order that has been entered previously in the case. In this instance, however, the court vacated the original scheduling order in this case and issued an amended scheduling order on May 7, 2009. Docket at 27 and 28. This action was taken with the express purpose of permitting the parties to conduct further discovery as it related to the plaintiff's proposed retaliation claims and to permit the plaintiff to file the present motion to amend. In fact, following a pretrial conference held on April 20, 2009, during which the issue of plaintiff's proposed amendments was discussed, the parties submitted a joint motion to extend the discovery deadline and to continue the trial in this case. That motion was also granted as part of the court's order entered on May 7. Therefore, Roembke Manufacturing does not contend that the plaintiff's motion to amend should be denied on the basis of undue delay or undue prejudice.

discrimination based on the actions of John Roembke under a *respondeat superior* theory does not mean that John Roembke can also be held personally liable for that discrimination. *Id*.

Next, Roembke Manufacturing argues that "[i]n Count II [of his proposed amended complaint], Behning seeks to hold Roembke Manufacturing liable for the private and individual action of John Roembke in his deciding not to renew a land lease between Roembke and Behning . . . ." *Id*., pp. 3-4. Roembke Manufacturing argues that "[t]his claim has no merit because John Roembke was not Behning's 'employer' under the ADEA as defined by 29 U.S.C. § 630(b) with respect to the land lease." *Id*., p. 4. Roembke Manufacturing's argument is that the lease agreement was nothing more than an agreement between the two men permitting one (Behning) to farm on land owned by the other (Roembke). No employer/employee relationship existed and, therefore, John Roembke's decision to terminate the lease agreement, regardless of his motivation, would not be actionable as an employment retaliation claim.

Next, Roembke Manufacturing argues that Behning cannot maintain a claim of retaliation since Behning was no longer employed at Roembke Manufacturing at the time John Roembke terminated the lease agreement and the lease agreement itself, for reasons discussed above, did not create any employment relationship. *Id*., p. 4. Roembke Manufacturing points out that "Behning was terminated . . . on February 28, 2007. . . . [He] filed a charge of discrimination under the ADEA on or about August 8, 2007 . . . . In March of 2008, John Roembke informed Behning that he would not be renewing the parties' farm land lease for 2009." *Id*. Consequently, according to Roembke Manufacturing, since the ADEA states that "[i]t shall be unlawful for an employer to discriminate against any of his EMPLOYEES OR APPLICANTS FOR EMPLOYMENT . . . because such individual . . . has opposed any practice made unlawful

5

by this section . . . ," and since Behning was neither of those at the time the land lease was terminated, he cannot maintain a claim of retaliation for that reason. *Id*., p.4 (quoting 29 U.S.C. § 623(d)) (capitalization added by defendant).

Roembke Manufacturing also maintains that Behning cannot pursue a retaliation claim because the termination of the land lease did not constitute an adverse employment action as required by the language the ADEA. *Id*., p. 5. In order to establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Horwitz v. Board of Education*, 260 F.3d 602, 611 (7th Cir. 2001). Roembke Manufacturing argues that Behning fails to satisfy the second prong of his prima facie case since "John Roembke's deciding not to renew Behning's farm land lease does not represent an adverse employment action. The parties' lease had nothing to do with Behning's employment with Roembke Manufacturing." *Id*., pp. 5-6. Also, Roembke Manufacturing argues that Behning fails to establish the third prong of a prima facie case of retaliation since there was "no causal connection between the protected activity and the adverse action . . . ." *Id*., p. 6. According to Roembke Manufacturing, "John Roembke's deci[sion] not to renew Behning's farm land lease in March of 2008 predated Behning's filing of his EEOC charge of discrimination April of 2008." *Id*.

**1. John Roembke's Status as "Employer."**

Behning argues that "both [John] Roembke and Roembke Mfg. & Design are employers under the ADEA." Plaintiff's Reply, p. 3. Citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995), Behning claims that "the Seventh Circuit clarified that an individual

6

may be held liable under anti-discrimination laws so long as the individual independently meets the statutory definition of an 'employer.'" *Id*. Behning claims the *AIC* case supports his argument that "Roembke independently qualifies as an employer by virtue of his status as the owner and CEO of Roembke Mfg. & Design." *Id*. Behning states in his brief that the *AIC* case uses the example of a sole proprietor who employs more than 15 people and is thus potentially liable in a suit brought under the Americans with Disabilities Act. *Id*. However, what the court stated was: "[N]o party disputes that a sole proprietor who employs more than fifteen people in his business would be liable as an 'employer' under the ADA, *even though not liable in his purely individual capacity*." *AIC*, 55 F.3d at 1280 n. 2 (italics added). Behning either misinterprets the holding in *AIC* or is attempting to twist certain language in that case (specifically, the dicta in footnote two just quoted) to support his argument while ignoring the heart of the Seventh Circuit's decision. In fact, the court in *AIC* arrived at the opposite conclusion when addressing the issue of individual liability. Even though that case involved an ADA claim, the court provided a lengthy and detailed discussion of the issue of individual liability under anti-discrimination statutes. The court explained as follows:

> [W]e join analogous decisions of our sister Circuits in holding that individuals who do not independently meet the ADA's definition of "employer" cannot be held liable under the ADA. . . . The ADA forbids discrimination by any "covered entity," defined as "an employer, employment agency, labor organization, or joint labor-management committee." . . . "Employer" is "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person." . . . The ADA's definition of "employer" mirrors the definitions of "employer" in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act (ADEA). Courts routinely apply arguments regarding individual liability to all three statutes interchangeably. Therefore, we will use other courts' interpretations of Title VII and the ADEA to help us in our decision. . . .
>
> Numerous district court decisions in this Circuit have addressed the question of

individual liability under the ADA, Title VII, and the ADEA. *Compare Hudson v. Soft Sheen Products, Inc.,* 873 F.Supp. 132 (N.D.Ill. 1995) (rejecting individual liability under Title VII) *and Johnson v. Northern Indiana Public Serv. Co.,* 844 F.Supp. 466 (N.D.Ind. 1994) (same) *with Jendusa,* 868 F.Supp. 1006 (recognizing individual liability under the ADA) *and Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769 (N.D.Ill. 1993) (recognizing individual liability under Title VII and the ADEA). We, however, have not ruled on the issue.

While no Circuit has directly confronted the question of individual liability under the ADA, five Circuits have explicitly addressed individual liability under Title VII and the ADEA. Four have rejected individual liability. *Smith v. Lomax,* 45 F.3d 402, 403-04 & n. 4 (11th Cir. 1995) (Title VII and ADEA); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.) (ADEA), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Grant v. Lone Star Co.,* 21 F.3d 649, 651-53 (5th Cir.) (Title VII), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); Miller, 991 F.2d at 587-88 (Title VII and ADEA); *see also Lenhardt v. Basic Inst. of Tech.,* 55 F.3d 377 (8th Cir. 1995) (holding that no individual liability exists under Missouri statute similar to the ADA). One Circuit has recognized individual liability. *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986) (recognizing in passing individual liability under Title VII). As we detail below, we find the more recent and more detailed decisions persuasive.

The [plaintiffs], fighting against the weight of authority, rely primarily on their own "plain language" interpretation of the ADA's definition of "employer." They argue that because "employer" is defined to include "a person ... and any agent of such person," and [the defendant] as president of AIC is an agent of AIC, she must be liable. While this reading has some surface appeal, *Miller,* 991 F.2d at 587, upon closer examination that appeal is really an illusion. Contrary to the [plaintiffs'] argument, the actual reason for the "and any agent" language in the definition of "employer" was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents. *Birkbeck,* 30 F.3d at 510; *Miller,* 991 F.2d at 587.

That conclusion accords with the rest of the structure of the ADA, Title VII, and the ADEA. Those statutes all limit employer liability to employers with either fifteen or twenty, or more, employees. That limitation struck a balance between the goal of stamping out all discrimination and the goal of protecting small entities from the hardship of litigating discrimination claims. *See Miller,* 991 F.2d at 587 ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."); *Birkbeck,* 30 F.3d at 510 ("The purpose of this provision can only be to reduce the burden of the ADEA on small businesses."). The EEOC's interpretation upsets that balance and distorts the

statutory framework.

>  The original design of damage awards under the ADA, Title VII, and the ADEA
>  buttresses our conclusion.  Until 1991, a successful plaintiff could recover only
>  back pay and equitable relief such as reinstatement.  Those types of remedies
>  typically are only obtainable from an employing entity, not from a mere
>  individual.  *Grant,* 21 F.3d at 653.  That arrangement suggests that Congress did
>  not contemplate individual liability when it originally passed the relevant statutes.
>  *Id.*

*AIC*, 55 F.3d at 1279-1281 (internal citations and footnotes omitted).

The *AIC* case resolves the issue, and Behning cannot bring a claim of retaliation against John Roembke in his individual capacity.  Therefore, his motion for leave to amend his complaint to do so would be futile and must be denied.

### 2. Behning's Status as a Former Employee.

Roembke Manufacturing contends that since Behning was neither an employee nor an applicant for employment at the time John Roembke canceled the farm land lease, Behning cannot maintain any claim for retaliation.  The defendant's argument is not well taken and, like Behning's argument concerning the personal liability of John Roembke, flies in the face of the applicable case law.  In his reply brief, Behning points out that Roembke Manufacturing's argument ignores the U.S. Supreme Court's decision in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).  Plaintiff's Reply, p. 5.  In *Robinson*, the Court ruled that the term "employees" includes "former employees" for purposes of Title VII retaliation claims.  *Robinson*, 519 U.S. at 346.

>  At first blush, the term "employees" in § 704(a) would seem to refer to those
>  having an existing employment relationship with the employer in question.  Cf.
>  *Walters v. Metropolitan Ed. Enterprises, Inc.,* 519 U.S. 202, 207, 208, 117 S.Ct.
>  660, 664, 136 L.Ed.2d 644 (1997) (interpreting the term "employees" in § 701(b),
>  42 U.S.C. § 2000e(b)).  This initial impression, however, does not withstand
>  scrutiny in the context of § 704(a).  First, there is no temporal qualifier in the
>  statute such as would make plain that § 704(a) protects only persons still
>  employed at the time of the retaliation.  That the statute could have expressly

9

included the phrase "former employees" does not aid our inquiry. Congress also could have used the phrase "current employees." But nowhere in Title VII is either phrase used-even where the specific context otherwise makes clear an intent to cover current or former employees. Similarly, that other statutes have been more specific in their coverage of "employees" and "former employees," see, *e.g.,* 2 U.S.C. § 1301(4) (1994 ed., Supp. I) (defining "employee" to include "former employee"); 5 U.S.C. § 1212(a)(1) (including "employees, former employees, and applicants for employment" in the operative provision), proves only that Congress *can* use the unqualified term "employees" to refer only to current employees, not that it did so in this particular statute.

*Robinson*, 519 U.S. at 541-42.

The Seventh Circuit also addressed the issue of whether the term "employee" included former employees, and held as follows:

> We therefore conclude that former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers under section 704(a). This holding is true to Congress' goal of "achiev[ing] equality of employment opportunities. . . . It complements the scheme of Title VII, which relies largely on employees themselves, including discharged employees, to enforce the dictates of the statute. . . . It is in harmony with the many decisions from other courts that have recognized the importance of assuring that discharged employees remain protected from retaliation when they assert their statutory rights, particularly when it is the discharge itself that is challenged.

*Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (internal citations omitted). Even though *Robinson* and *Veprinsky* dealt with Title VII retaliation actions as opposed to ADEA retaliation claims, the wording of the retaliation provisions of the two statutes is virtually identical.³ Accordingly, the reasoning of these two cases apply to the present case, and Behning

---

³ The anti-retaliation provision of the ADEA is found at 29 U.S.C. § 623(d) and states as follows:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member

can maintain a claim of retaliation based on John Roembke's action of canceling the farm land lease shortly after Behning filed his original claim of discrimination.

### 3. Behning's Prima Facie Case of Retaliation.

As stated above, Roembke Manufacturing maintains that Behning should not be permitted to amend his complaint to add a retaliation claim since he cannot (according to the defendant) establish a prima case. Roembke Manufacturing argues that Behning did not suffer an adverse employment action since he was no longer an employee of the company and the farm land lease was unrelated to his employment, and that he cannot establish a causal nexus between John Roembke's allegedly retaliatory action and Behning's exercise of his statutory rights under the ADEA. Again, the defendant's argument fails. As Behning points out, Roembke Manufacturing's argument on this issue ignores yet another Supreme Court decision. In the case of *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-63 (2006), the Court explained as follows:

> Petitioner and the Solicitor General both argue that the Sixth Circuit is correct to require a link between the challenged retaliatory action and the terms, conditions, or status of employment. They note that Title VII's substantive anti-discrimination provision protects an individual only from employment-related discrimination. They add that the anti-retaliation provision should be read *in pari materia* with the anti-discrimination provision. And they conclude that the

---

thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

*See also, Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 588 n. 3 (9th Cir. 1993) (for analytical purposes, the anti-retaliation language of the ADEA is interchangeable with Title VII).

11

employer actions prohibited by the anti-retaliation provision should similarly be limited to conduct that "affects the employee's 'compensation, terms, conditions, or privileges of employment.'"

We cannot agree. The language of the substantive provision differs from that of the anti-retaliation provision in important ways. Section 703(a) sets forth Title VII's core anti-discrimination provision in the following terms:

"It shall be an unlawful employment practice for an employer–

"(1) *to fail or refuse to hire or to discharge* any individual, or otherwise to discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment,* because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way *which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee,* because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a) (emphasis added).

Section 704(a) sets forth Title VII's anti-retaliation provision in the following terms:

"It shall be an unlawful employment practice for an employer *to discriminate against* any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a) (emphasis added).

The underscored words in the substantive provision–"hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee"–explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the anti-retaliation provision. Given these linguistic differences, the question here is not whether identical or similar words should be read *in pari materia* to mean the same thing. . . . Rather, the question is whether Congress intended its different words to make a legal difference. We normally presume that, where words differ as they differ here, "'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"

There is strong reason to believe that Congress intended the differences that its

language suggests, for the two provisions differ not only in language but in purpose as well. The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.,* their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct.

To secure the first objective, Congress did not need to prohibit anything other than employment-related discrimination. The substantive provision's basic objective of "equality of employment opportunities" and the elimination of practices that tend to bring about "stratified job environments," *id*., at 800, 93 S.Ct. 1817, would be achieved were all employment-related discrimination miraculously eliminated.

But one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the anti-retaliation provision's objective would *not* be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace. *See*, *e.g., Rochon v. Gonzales,* 438 F.3d, at 1213 (FBI retaliation against employee "took the form of the FBI's refusal, contrary to policy, to investigate death threats a federal prisoner made against [the agent] and his wife"); *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 984, 986 (10th Cir. 1996) (finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination). A provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's "primary purpose," namely, "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Thus, purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.

*Burlington Northern,* 548 U.S. at 61-63 (internal citations omitted).

Since John Roembke, as owner and CEO of Roembke Manufacturing, is clearly an "agent" of the company, the fact that he allegedly retaliated against Behning by terminating the farm land lease is an action that can cause liability to attach to the corporation should a jury find that the action was, in fact, retaliatory. Thus, while the court concludes that Behning cannot maintain a retaliation claim against John Roembke individually, he will be permitted to amend his complaint to allege a claim of retaliation against Roembke Manufacturing. Thus, Behning has established a prima facie case of retaliation in that (1) he engaged in protected activity by filing a claim of discrimination under the ADEA, (2) he suffered an adverse action when John Roembke terminated the farm land lease, and (3) a causal nexus exists in that John Roembke terminated the lease shortly after learning of Behning's discrimination claim.[4] This is sufficient, especially at the pleading stage, to permit Behning to amend his complaint to add a claim of retaliation against Roembke Manufacturing.

---

[4] As stated above, Roembke Manufacturing makes the rather curious assertion that Behning cannot establish a causal nexus between John Roembke's action in terminating the farm land lease and Behning's exercise of his rights under the ADEA. Again, Roembke Manufacturing states in its brief that "Roembke's deci[sion] not to renew Behning's farm land lease in March of 2008 predated Behning's filing of his EEOC charge of discrimination in April of 2008." Defendant's Response, p. 6. But the copies of Behning's EEOC charges, attached to his motion for leave to amend, indicate that he filed his ADEA charge on August 8, 2007. Plaintiff's Motion for Leave to Amend, Exhibit A. It appears to be undisputed that John Roembke terminated the farm land lease in March of 2008. Defendant's Response, p. 6. Then, on April 22, 2008, Behning filed his EEOC charge alleging retaliation. Plaintiff's Motion for Leave to Amend, Exhibit C. Thus, Roembke Manufacturing was apparently confusing Behning's ADEA charge, which preceded the alleged act of retaliation, and his retaliation charge, which by necessity followed the alleged act.

## CONCLUSION

For the reasons discussed above, the Motion for Leave to Amend filed by the plaintiff, Mark Behning, is GRANTED in part and DENIED in part. The plaintiff is directed to file a revised First Amended Complaint that complies with the ruling in this Order. The revised First Amended Complaint shall be filed within fourteen (14) business days of the date of entry of this Order.

Dated: July 6, 2009.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana